COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and McClanahan
Argued at Salem, Virginia


TERESA GRIMES GUYNN AND
  STEVEN D. GUYNN

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1370-10-3                   JUDGE ROBERT J. HUMPHREYS
                                                      DECEMBER 28, 2010
PULASKI COUNTY DEPARTMENT
  OF SOCIAL SERVICES


                  FROM THE CIRCUIT COURT OF PULASKI COUNTY
                            Colin R. Gibb, Judge[1]

          Terri Morrison Bowles (Debra K. Sifford; Bowles Law Office, on
          brief), for appellants.

          Clifford L. Harrison (Michael J. Sobey, Guardian *ad litem* for the
          infant children; Harrison & Turk, on brief), for appellee.


        Teresa Grimes Guynn ("mother") and Steven D. Guynn ("father") appeal the termination

of their parental rights in and to their twin daughters C.G. and V.G., born August 27, 2007.

Mother and father specifically allege the circuit court erred in (1) finding the Pulaski County

Department of Social Services ("the Department") made reasonable and appropriate efforts to

assist mother in remedying the situation that led to the placement of the children in foster care,

(2) finding that father, without good cause, has been unwilling or unable to substantially remedy

the conditions which led to or required the placement of the children in foster care, (3) finding

the children were in fact neglected or abused and that the abuse or neglect presented a serious

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Retired Judge J. Colin Campbell signed the statement of facts attesting to the "accurate and complete memorialization of the testimony and incidents of trial."

and substantial threat to the children's lives, health or development, (4) finding that the conditions which resulted in such neglect or abuse could not be substantially corrected or eliminated so as to allow the children's safe return to the parents within a reasonable period of time, and (5) dismissing mother's and father's petitions for custody and visitation. Finding no error in the circuit court's decision, we affirm.

## I. Analysis

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). On appeal, we presume the trial court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "For purposes of appellate review, a trial court's determination is considered to have settled all conflicts in the evidence in favor of the prevailing party, and the prevailing party's evidence is entitled to all reasonable inferences fairly deducible therefrom." Farley, 9 Va. App. at 328, 387 S.E.2d at 795. "A trial court's determination of matters within its discretion is reversible on appeal only for an abuse of that discretion . . . and a trial court's decision will not be set aside unless plainly wrong or without evidence to support it." Id. (citations omitted).

### A. The Department's alleged failure to provide reasonable and appropriate services to mother

Mother first contends the circuit court erred in finding the Department made reasonable and appropriate efforts under Code § 16.1-283(C)(2)[2] to help her remedy the situation leading to

---

[2] Code § 16.1-283(C)(2) provides in pertinent part:

> The residual parental rights of a parent or parents of a child placed
> in foster care as a result of court commitment . . . may be

the children's placement in foster care. Specifically, mother complains that because she "was not allowed to ask the Department about the results" of her psychological evaluation or "how the results related to the services [the Department] offered to the mother," there was "not sufficient evidence before the court to know whether or not the Department made reasonable and appropriate efforts to help mother with services to meet the goal of return home." Mother's argument is without merit.

In accordance with Code § 16.1-283(C)(2), the circuit court may terminate the residual parental rights of a parent whose child has been placed in foster care if the parent, without good cause, has been unwilling within a reasonable period of time to remedy the circumstances that led to the placement of the child in foster care. As mother correctly notes, "the statutory language contained in Code § 16.1-283(C)[(2)] requires 'reasonable and appropriate' efforts to be made to provide services" to the parent before termination of parental rights can occur.

---

terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

\* \* \* \* \* \* \*

The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court . . . shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

Ferguson v. Stafford County Dep't of Social Services, 14 Va. App. 333, 338, 417 S.E.2d 1, 9 (1992). However, "'[r]easonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case." Id. Thus, whether or not the Department's efforts constitute "reasonable and appropriate efforts" depends largely upon the very specific factual scenario before the court. Id. at 338, 417 S.E.2d at 10.

In mother's case, the Department provided various and extensive services to assist mother in remedying the situation leading to the children's placement in foster care. Indeed, the Department referred Susan Lindsey, an expert in early childhood development, to the family shortly after the children's premature birth, in order to assist with the children's development and to help correct their "failure to thrive." From December 10, 2007 to April 16, 2008, and again from September to October of 2008, mother received help from the Infant and Toddler Connection, Medicaid, CHIP and early intervention, and case management. Mother also received food stamps. After the children's placement in foster care in October of 2008, the Department provided mother with parenting classes, bi-weekly visitation with the children, housing assistance, attendance at Family Assessment and Planning Team meetings ("FAPT"), and counseling.

Nevertheless, mother contends the Department failed to provide her with the "specialized" services she requires to understand the needs of her children or to help with their therapy. Mother notes that, according to her psychological evaluation, her "fund of information is limited," she is "unable to recognize deficits or areas of needed improvement," and she "lacks insight" into the "gravity of the circumstances that have led to the necessity of social services intervention." The evaluator concluded, "given her cognitive/intellectual functioning, supportive and directive assistance in developing and maintaining a reasonable parenting plan and sanitary environment in the home are liable to yield the greatest immediate benefits." Such was the goal

behind many of the services offered; mother simply failed to comply with those services. Moreover, the record indicates that mother understood the requirements of the foster care plan.

In fact, although mother was low functioning, she was aware the children were diagnosed with a failure to thrive and she, thus, took the children to all of their medical appointments. The children were up to date on their shots at the time of their removal from mother's home. Mother's compliance with CHIP was minimal at first, but then she became more cooperative. Mother never attended any FAPT meetings, but she did eventually attend parenting meetings. Additionally, mother's suggestion that she is incapable of understanding the importance of keeping her house clean is belied by the fact that she cleaned up the house after each of the Department's visits and by her testimony that she now keeps a clean house. Mother also apparently understands that she is required to maintain suitable housing, as evinced by her testimony that she currently has a nice apartment, all the utilities are turned on, and she has plenty of groceries. Finally, mother submitted to her psychological evaluation, as required.

And yet, although mother was aware of the children's considerable needs, she repeatedly failed to appear for the children's visits with Lindsey, where she would have learned how to help with the children's therapy. The only reason given for her failure to attend these sessions was that mother did not like Lindsey. Contrary to her assertion, the record fails to show that mother did not understand or realize the importance of attending Lindsey's sessions with the children. Rather, the circuit court adopted Lindsey's opinion and found that mother's inability with the children resulted more from her lack of interest and failure to pay attention than from her mental deficiency.

We conclude on these facts that the circuit court did not err in finding mother failed to show she was "unable to learn or to be taught" how to remedy the circumstances that led to the children's placement in foster care. Rather, mother exhibited a mere unwillingness or inability to

comply with the Department's efforts, or to remedy substantially the conditions that led to the children's placement in foster care. Moreover, mother's assertion that the Department was required to provide "specialized" services in response to her psychological evaluation is not supported by the record, especially in light of the fact that mother failed to call the evaluator as an expert witness at trial. The circuit court found the Department provided reasonable and appropriate services to mother in its effort to meet its goal of returning the children home. The record supports that finding. We will, thus, affirm the circuit court on this issue.

B. The Department's failure to consider father's mental low functioning as being "good cause" for his inability to remedy the conditions that led to the removal of the children, and its failure to provide reasonable and appropriate services to address the conditions that led to the children's placement in foster care

Father contends on appeal that the Department erred in finding he failed to remedy the conditions that led to the placement of the children in foster care "without good cause." Father contends his mental low functioning may have precluded him from complying with the services provided by the Department, and he argues the Department did not provide the necessary services to evaluate whether father could reasonably be expected to undertake the responsibility for the care needed by his special needs children. Essentially, like mother, father contends the evidence failed to show that the Department provided him with reasonable and appropriate services.

In deciding whether to terminate the rights of a parent to his child, "'the best interests of the child must be the primary concern of the court.'" Richmond Dep't of Soc. Servs. v. L.P., 35 Va. App. 573, 584, 546 S.E.2d 749, 754 (2001) (quoting Stanley v. Fairfax County Dep't of Soc. Servs., 242 Va. 60, 63, 405 S.E.2d 621, 623 (1991)). "The purpose of Code § 16.1-283(C)(2) is to ensure, if possible, that the best interests of the child are achieved by 'protecting the family unit and attendant rights of both parents and child, while assuring resolution of the parent-child relationship without interminable delay.'" Id. (quoting Lecky v. Reed, 20 Va. App. 306, 312,

456 S.E.2d 538, 540 (1995)).  "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities."  Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Father argues that the services offered by the Department failed to address father's mental deficiency.  Father alleges, "the first time the Department acknowledged father was low functioning was at trial."  Father reasons that because the Department failed to tailor his services to his specific mental deficit, the Department failed to affirmatively show he was unable "without good cause" to remedy the conditions leading to the children's placement in foster care.  However, though Susan Lindsey could not answer what if anything she did to ensure father understood her instructions," and though Department social worker Melodie DeCosta acknowledged father *may not* have understood Lindsey's instructions, the fact remains that father failed to complete his required psychological evaluation, even though the Department scheduled the evaluation three separate times.  The Department's alleged failure in addressing father's mental low functioning, thus, resulted from father's unwillingness to cooperate with the department, rather than from the Department's failure to provide appropriate services.  Moreover, father concedes he understood many of Susan Lindsey's instructions and, like mother, father complied with many of the services offered by the Department.  It, thus, appears that father's failure to comply with all of the requirements of the foster care plan did not result from his mental deficiency, as he contends, but rather from his unwillingness to remedy the situation that led to the children's placement in foster care.

Because the circuit court's finding that father was unwilling, without good cause, to remedy the circumstances that led to placement of the children in foster care notwithstanding

- 7 -

reasonable and appropriate efforts on the part of the Department is not plainly wrong, we will affirm the circuit court on this issue.[3]

### C. The finding of physical and medical neglect

Mother and father allege the circuit court erred in finding the children were neglected or abused and that such neglect or abuse presented a serious and substantial threat to the children's lives, health or development. Mother and father maintain that the problems experienced by the children resulted from the fact that they were born prematurely, rather than by any act or omission on their part. The Department responds that this issue is barred by principles of *res judicata*, since the question of whether or not the twins were abused or neglected was tried at the original adjudicatory hearing, and the court's finding as to the abuse or neglect was not appealed. We agree with the Department.

Code § 16.1-253(A) provides in pertinent part that "[u]pon the motion of any person or upon the court's own motion, the court may issue a preliminary protective order, after a hearing, if necessary to protect a child's life, health, safety or normal development pending the final determination of any matter before the court." Code § 16.1-278.2(A) provides that "[w]ithin seventy-five days of a preliminary protective order held pursuant to . . . a hearing on a

---

[3] The Department argues that the question of whether the services offered by the Department to both mother and father were reasonable is a matter that is barred on appeal by principles of *res judicata*. The Department maintains that the inquiry into the reasonableness of services offered by the Department is a matter that should be addressed by competent counsel at the foster care plan hearings "and not collaterally attacked at the termination." Essentially, the Department would have us hold that by definition, the services offered by the Department are reasonable because they were ordered by the court, and unless the reasonableness of those services is appealed at the foster care level, it is a final finding as to the reasonableness of the services. Because mother and father did not appeal the reasonableness of the services at the foster care level, the Department urges that this Court find the first two assignments of error in this appeal are not reviewable. We decline to do so. Contrary to the Department's assertions, the question of whether or not the Department offered reasonable services is not merely a matter for the foster care hearing. The statutory scheme expressly requires the circuit court to find, before terminating parental rights, that the Department offered reasonable services to the parent. See Code § 16.1-283(C)(2).

- 8 -

preliminary protective order held pursuant to § 16.1-253, a dispositional hearing shall be held if the court found abuse or neglect and (i) removed the child from his home or (ii) entered a preliminary protective order." As the Department correctly notes, Code § 16.1-278.2(D) provides that "[a] dispositional order entered pursuant to this section is a final order from which an appeal may be taken in accordance with § 16.1-296."

In the instant case, the children were removed from the home by preliminary protective order on October 7, 2008 and placed in foster care on October 8, 2008. According to the Department, the court held a dispositional hearing pursuant to Code § 16.1-253 resulting in a finding of abuse or neglect. That finding was not appealed. The question of whether or not the children were abused or neglected is, therefore, final for purposes of the instant appeal.

Mother and father also assign error to the circuit court's finding that the neglect or abuse suffered by the children "presented a serious and substantial threat to [their] life, health or development," in accordance with Code § 16.1-283(B)(1).[4] Mother and father argue that any threat to the children's lives resulted directly from the children's premature birth, rather than from any abuse or neglect. We disagree. Susan Lindsey testified that left in the care of mother and father, the children developed cradle cap and their clothes were stained with vomit and filth.

---

[4] Code § 16.1-283(B)(1) provides:

> The residual parental rights of a parent or parents of a child found by the court to be neglected or abused and placed in foster care as a result of (i) court commitment; (ii) an entrustment agreement entered into by the parent or parents; or (iii) other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

> \*　　\*　　\*　　\*　　\*　　\*　　\*

> The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development[.]

She stated they could not get the exercise they needed in order to develop properly because there was no place on the floor for them to play and stretch. Both children had severe difficulty in chewing their food and they, thus, lost weight in mother's care; yet, mother and father refused to attend half of the children's visits with Lindsey, where they could learn how to help feed and nurture them. Neither parent exhibited any interest in learning how to assist or care for the children. In fact, mother and father cancelled all visits with the children in February of 2009, and they refused to resume visitation in April of 2009, because they did not have the skills or the finances to deal with these special needs children. Although both children made great strides while in foster care, they were both still developmentally delayed and in need of constant care at the time of the hearing.

On this evidence, the circuit court found these parents are low functioning adults who lack the interest and ability to take care of these children with special needs and they lack the skills and the ability to develop the skills to care for them. The circuit court noted the parents would require constant monitoring. The guardian *ad litem* agreed that to allow mother and father to parent the twins would require "someone looking over their shoulder forever," and opined that to return these children to mother and father would be "disastrous." The court's findings are supported by the record and not plainly wrong. We, therefore, affirm.

D. <u>The parents' failure to remedy the conditions leading to foster care within a reasonable period of time</u>

Mother and father allege the circuit court erred in finding the Department gave them enough time to remedy the conditions that led to the placement of the children in foster care.

The circuit court terminated mother's and father's residual parental rights under both Code § 16.1-283(B)(1), (2) and Code § 16.1-283(C)(2). Code § 16.1-283(B) provides that the court may terminate parental rights in cases where "it is not reasonably likely that the conditions which resulted in" the child's placement in foster care "can be substantially corrected or

- 10 -

eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time." Although Code § 16.1-283(B) does not elaborate on what is meant by a "reasonable period of time," Code § 16.1-283(B)(2)(c) suggests that a parent's failure to follow through with "appropriate, available and reasonable rehabilitative efforts" on the part of the department "shall constitute prima facie evidence" that such conditions cannot be corrected within a reasonable period of time. Code § 16.1-283(C)(2) suggests that the Department need only give a parent up to twelve months to remedy the conditions that led to the placement of a child in foster care. Again, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood, 10 Va. App. at 540, 394 S.E.2d at 495.

In this case, the Department worked with the parents from 2007 to 2009. During that time, the Department provided Infant and Toddler assistance, food stamps, CHIP, Medicaid, case management, attendance at FAPT meetings, parenting classes, psychological evaluations, and counseling. Notwithstanding the Department's efforts, mother and father repeatedly failed to appear for Susan Lindsey's development sessions with the children, they failed to sustain regular and adequate housing, they failed to keep the house clean, they exercised sporadic visitation, and they refused to visit with the twins any longer after February 24, 2009. When the Department encouraged mother and father to resume visitation in April 2009, mother and father refused. In March of 2009, mother and father expressly asked to execute a permanent entrustment agreement so their friends, the Chafins, could adopt the children. By the time of the termination hearing, the Department had been working with mother and father, to no avail, for more than two years.

Given this factual scenario, the circuit court was not plainly wrong in finding that mother and father were unwilling within a reasonable period of time to remedy the circumstances that led to the placement of the children in foster care. It is simply of no moment, under the facts

presented in this case, that the children were not actually placed in foster care until October of 2008. The Department was working with this family as of late December 2007. Code § 16.1-283(C)(2) expressly provides that "the court shall take into consideration the prior efforts of [the Department] to rehabilitate the parent or parents prior to the placement of the child in foster care." Nor is our analysis altered by the fact that mother and father obtained suitable housing by the time of the hearing in January of 2010. The Department had moved for a change of goal to adoption long before then. In short, mother and father were given a reasonable period of time to correct the situation; they were simply unwilling to do so. We, thus, affirm the circuit court on this issue.

E. <u>The trial court's dismissal of mother's and father's custody and visitation petitions</u>

Lastly, mother and father contend the circuit court erred in dismissing the custody and visitation petitions they filed in response to the Department's petition for termination of their residual parental rights. However, because mother and father failed to preserve this issue for appeal, we do not consider it.

When the Department made the decision to file for termination of parental rights, mother and father apparently filed a motion to amend to ask the court to award them custody and/or visitation with the children. Mother and father allege that "based on the testimony of the parties, the court should have concluded it was proper to resume visitation and consider the return of custody at a later date." However, mother and father did not assign error to the circuit court's dismissal of their petitions in the court below. The termination orders, upon which their objections to the court's rulings appear, do not mention these petitions for custody, and the statement of facts in this case does not indicate that mother and father expressed any objection to the court's dismissal of them. Moreover, mother and father do not develop their argument or otherwise support their assertion with any legal authority on brief. This issue is, therefore, not

properly preserved for appeal, and we will not consider it.  See Rule 5A:20(e) ("The opening

brief of appellant shall contain . . . [t]he standard of review and the argument (including

principles of law and authorities) relating to each assignment of error."); see also Doering v.

Doering, 54 Va. App. 162, 171 n.3, 676 S.E.2d 353, 357 n.3 (2009) ("Unsupported assertions of

error do not merit appellate consideration.").[5]

## II.  Conclusion

For the foregoing reasons, we conclude the circuit court did not err in terminating the

residual parental rights of both of these parents.  We, thus, affirm.

Affirmed.

---

[5] The Department "affirmatively wishes to raise" the question of whether or not the juvenile and domestic relations district courts of this Commonwealth lack jurisdiction to consider custody petitions such as the ones filed by mother and father in this case.  Because we find that any error pertaining to the dismissal of the custody petitions is not properly preserved, we decline the Department's invitation to address the "proper procedure" for conferring jurisdiction on such courts in similar cases.  "[C]ourts are not constituted . . . to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative."  Commonwealth v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998) (citations omitted).